# IN THE COURT OF APPEALS OF TENNESSEE
## AT MEMPHIS
### February 24, 2015 Session

## THOMAS L. WENZLER, SR. v. SHELBY COUNTY, TENNESSEE, ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-09-0240-2     Arnold B. Goldin, Chancellor**

_____

**No. W2014-01097-COA-R3-CV – Filed April 16, 2015**

_____

This case involves judicial review of a decision of the Shelby County Civil Service Merit Board. The appellee was terminated from his employment with the Shelby County government due to an alleged violation of a conflict of interest policy. After a two-day hearing, the Civil Service Merit Board upheld the employee's termination. The employee sought judicial review in chancery court. After reviewing the record, the chancellor found no substantial and material evidence to support the termination of the employee and ordered him reinstated with backpay and benefits. The County appeals. Discerning no error, we affirm the decision of the chancery court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

BRANDON O. GIBSON, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

David McKinney, Assistant County Attorney, Memphis, Tennessee, for the appellant, Shelby County, Tennessee.

Kathleen Laird Caldwell, Memphis, Tennessee, for the appellee, Thomas L. Wenzler, Sr.

### MEMORANDUM OPINION[1]

_____

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee states:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

# I. FACTS & PROCEDURAL HISTORY

After working as a plumber for twenty years, Thomas L. Wenzler, Sr. ("Wenzler") began working as a plumbing inspector for the Memphis and Shelby County Office of Construction Code Enforcement in 1992. The chain of events leading to the termination of Wenzler's employment began in November 2007. The code enforcement office received a complaint that plumbing work was being performed at a certain address on Tutwiler Avenue without a plumbing permit. A plumbing inspector went to the address to investigate and determined that plumbing work was indeed being performed. The individual performing the work was Wenzler's adult son. He gave the inspector a business card that stated, "American Tech Plumbing – Thomas Wenzler, Jr. – Plumber."

The matter was investigated by Chris Mahoney, a senior plumbing inspector at the code enforcement office and Wenzler's supervisor. Mahoney learned that not only was there no permit for plumbing work at the specified address, but American Tech Plumbing was not a licensed plumbing contractor. Mahoney checked his office's human resources records and determined that the telephone number on the American Tech Plumbing business card was Wenzler's home address and telephone number. Mahoney found that American Tech Plumbing was also listed in the 2008 edition of the Yellow Pages telephone book with Wenzler's home address and telephone number. The code enforcement office issued Wenzler's son a courtesy citation for contracting to do plumbing work without a license or a permit. The general sessions court of Shelby County also entered an order directing Wenzler's son to refrain from acting as a plumbing contractor unless he acquired a plumbing license. Mahoney compiled all of the relevant information and sent it to the legal section of the code enforcement office for further investigation.

Several months later, on May 22, 2008, the office of code enforcement issued Wenzler a "Notice of Proposed Major Discipline." The notice charged Wenzler with violating an office policy regarding conflicts of interest due to his son's citation for unlicensed plumbing work and the use of Wenzler's address and telephone number on the business card for American Tech Plumbing. An addendum to the notice of discipline also alleged that Wenzler had improper communications with others regarding his son's business. On June 24, 2008, after a Loudermill hearing,[2] the administrator of the office of code enforcement, Allen Medlock, concluded that Wenzler was in violation of the conflict of interest policy and that termination was warranted. His written decision

---

[2]The term "Loudermill hearing" stems from the United States Supreme Court's decision in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). The *Loudermill* Court held that a public employee who can be discharged only for cause must be given notice and an opportunity to respond to the charges against him prior to termination. *Loudermill*, 470 U.S. at 546; *Case v. Shelby County Civil Serv. Merit Bd.*, 98 S.W.3d 167, 170, n.1 (Tenn. Ct. App. 2002).

stated, in pertinent part:

> After reviewing everything said and investigated, we cannot justify in any way, form or fashion how any reasonable person would allow a plumbing business to be run out of the family home while working for the Code Enforcement Department. Our credibility as a neutral and credible regulatory body must not be compromised in any way. To allow otherwise, would erode our credibility among the Contractors that we work with each day and jeopardize our main function of ensuring Public safety through a well defined standard within the various crafts that we regulate.

Wenzler appealed his termination to the Shelby County Civil Service Merit Board. The Board heard the appeal on September 4 and November 20, 2008. Eleven witnesses testified. On December 18, 2008, the Board issued a written decision finding that Wenzler was terminated for just cause.

Wenzler filed a petition for judicial review in chancery court on February 6, 2009. Due to the lack of written findings in the Board's order, the chancery court concluded that judicial review of the order was not possible. Accordingly, the chancery court remanded the case to the Board with instructions for the Board to issue a decision containing findings of fact and conclusions of law. The Board issued another order on remand, but the chancery court determined that it, too, was defective. The chancery court remanded the matter a second time with instructions for the Board to issue written findings of fact and conclusions of law based on the hearings previously conducted.

The Board issued its third written order in this case on August 27, 2013. The order states that the Board reviewed and considered the transcripts and exhibits of the hearings conducted on September 4 and November 20, 2008. After this review, the Board again found that Wenzler violated the conflict of interest policy, which warranted termination of his employment.

On May 6, 2014, the chancery court entered an order on Wenzler's petition for judicial review and found that the findings of the Board were not supported by substantial and material evidence in the record. Consequently, the chancery court reversed the finding of the Board and ordered Wenzler reinstated with full backpay and benefits. Shelby County timely filed a notice of appeal to this Court.

## II. ISSUES PRESENTED

Shelby County presents the following issues, as slightly re-worded, for review on appeal:

1.     Whether the trial court exceeded its scope of review of the Board's decision and improperly substituted its judgment for that of the Board;

2.     Whether the trial court erred in holding that the decision of the Board was not based on substantial and material evidence in the record;

3.     Whether the trial court erred and/or abused its discretion in holding that the Board could not make witness credibility determinations based on transcripts and in failing to defer to the factual findings of the Board;

4.     Whether the trial court's reversal of the decision of the Board and order of reinstatement, full backpay and benefits results in a gross miscarriage of inequity.

5.     Whether the trial court erred in failing to dismiss the case for failure to prosecute.

For the following reasons, we affirm the decision of the chancery court and remand for further proceedings.[3]

## III. STANDARD OF REVIEW

On appeal, we review the decision of the Shelby County Civil Service Merit Board using the same standard of review used by the chancery court. *Parker v. Shelby County Gov't Civil Serv. Merit Bd.*, 392 S.W.3d 603, 611 (Tenn. Ct. App. 2012); *Macon v. Shelby County Gov't Civil Serv. Merit Bd.,* 309 S.W.3d 504, 508 (Tenn. Ct. App. 2009). Judicial review is governed by the Uniform Administrative Procedures Act, Tenn. Code Ann. § 4-5-322. *See* Tenn. Code Ann. § 27-9-114(b)(1).

(h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision

---

[3]We note that Shelby County suggests in its brief that the Board's first order contained sufficient findings for the chancery court to review, and therefore, the chancery court erred in initially remanding the case to the Board for additional findings. However, this issue was not listed as one of the issues presented for review in Shelby County's brief. "'Courts have consistently held that issues must be included in the Statement of Issues Presented for Review required by Tennessee Rules of Appellate Procedure 27(a)(4). An issue not included is not properly before the Court of Appeals.'" *Bunch v. Bunch*, 281 S.W.3d 406, 410 (Tenn. Ct. App. 2008) (quoting *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001)). Consequently, we have not addressed the issue in this opinion.

if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

 (1) In violation of constitutional or statutory provisions;

 (2) In excess of the statutory authority of the agency;

 (3) Made upon unlawful procedure;

 (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

 (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

 (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322.

Only the last two statutory grounds for reversal relate to the sufficiency of the evidence. *Davis v. Shelby County Sheriff's Dep't*, 278 S.W.3d 256, 264 (Tenn. 2009). The standards of review under subsections (4) and (5) above "are narrower than the standard of review normally applicable to other civil cases." *Parker*, 392 S.W.3d at 612 (quoting *Jackson Mobilphone Co., Inc. v. Tennessee Pub. Serv. Comm'n*, 876 S.W.2d 106, 110-11 (Tenn. Ct. App. 1993)). "Substantial and material evidence" has been defined as "'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis'" for the action under consideration. *Macon*, 309 S.W.3d at 509 (quoting *Pruitt v. City of Memphis*, No. W2004-01771-COA-R3-CV, 2005 WL 2043542, at *7 (Tenn. Ct. App. Aug. 24, 2005)). It requires "'something less than a preponderance of the evidence, but more than a scintilla or glimmer.'" *Id.* (quoting *Wayne Co. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988)). "We may reject the Board's decision only if a reasonable person would necessarily reach a different conclusion based on the evidence." *Davis*, 278 S.W.3d at 265 (citing *Martin v. Sizemore*, 78 S.W.3d 249, 276 (Tenn. Ct. App. 2001)). "It is not enough that the facts could support a different conclusion." *Id.* However, a reviewing court should not apply the "'substantial and material evidence' test mechanically." *Parker*, 392 S.W.3d at 612 (quoting *Jackson Mobilphone Co., Inc.*, 876 S.W.2d at 110-11). The substantial and material evidence standard still requires a "searching and careful inquiry" that subjects the Commission's decision to close scrutiny. *Freedom Broadcasting of TN, Inc. v. Tenn. Dep't of Revenue*, 83 S.W.3d 776, 781 (Tenn. Ct. App. 2002). A court's deference to an agency or

commission's expertise is "'no excuse for judicial inertia.'" *Willamette Indus., Inc. v. Tenn. Assessment Appeals Comm'n*, 11 S.W.3d 142, 147 (Tenn. Ct. App. 1999) (quoting *Wayne County*, 756 S.W.2d at 279). A decision that is not supported by substantial and material evidence is, by definition, arbitrary and capricious. *Outdoor Resorts at Gatlinburg, Inc. v. Utility Mgmt. Review Bd.*, No. E2011-01449-COA-R3-CV, 2012 WL 1267858, at *5 (Tenn. Ct. App. Apr. 13, 2012) (citing *Jackson Mobilphone Co.*, 876 S.W.2d at 110).

We review a trial court's decision regarding dismissal for failure to prosecute using an abuse of discretion standard. *Hessmer v. Hessmer,* 138 S.W.3d 901, 904 (Tenn. Ct. App. 2003)).

## IV. DISCUSSION

On appeal, Shelby County's first contention is that the chancery court impermissibly substituted its judgment for that of the Board and reweighed the evidence in concluding that the Board's decision to terminate Wenzler was not supported by the record.

We begin with a review of the conflict of interest policy allegedly violated by Wenzler. The conflict of interest policy was specific to the office of code enforcement. It provided:

> Conflict of interest is defined as, *but not limited to*, the following. Any employee of the Memphis and Shelby County Office of Construction Code Enforcement who willfully conceals or violates any of these provisions may forfeit his/her employment.
>
> 1. Employees shall not be financially interested in the furnishing of labor, material or appliances for the construction, alteration, or maintenance of a building, or in the making of plans or specification thereof, unless he is the owner of such building.
>
> 2. Employees shall not engage in any work which is inconsistent with his/her duties or with the interests of the department.
>
> 3. Employees shall not recommend contractors and/or skilled laborers/craftsmen to the public regardless of whether or not a permit is required.

4.	Employees shall not receive fees for work performed during their normal assigned working hours in the department of Construction Code Enforcement.

5.	Employees shall not perform any work related to the department at any location regardless of whether or not a permit is required, unless the employee is the owner of the property.

6.	Employees shall not accept any compensation, gratuities, gifts, or services from any person or firm having business with the department.

7.	Employees shall not remove or accept any type construction or building materials or equipment from a job site.

8.	Employees shall not engage in consulting and/or advising anyone in matters relating to the department except those matters which are specifically related to his/her job duties.

9.	Employees shall get permission from the Administrator through his/her supervisor before entering any secondary employment or self-employment by submitting a written request describing the work and the hours of work.

(Emphasis added.)  Shelby County does not argue that Wenzler engaged in conduct that would constitute any of the specific examples listed in the conflict of interest policy. Instead, Shelby County relies on the introductory paragraph of the policy which states that a conflict of interest "is defined as, *but not limited to,* the following." (Emphasis added.)

During the hearing before the Board, Wenzler testified that American Tech Plumbing was wholly owned and operated by his wife.  He insisted that he had no involvement in the development of the company and owned no interest in it.  Wenzler testified that his wife had experience in the plumbing field because her father ran a plumbing business, and she assisted her father in that business in the past.  Wenzler testified that his wife decided to start her own plumbing business around September of 2007.  According to Wenzler, he was opposed to his wife's plan but did not control her decision.  Wenzler testified that he understood the conflict of interest policy as prohibiting financial involvement with or management of a plumbing business, and he refused to have any type of involvement with his wife's business.  He said that Wife's original plan was to go into business with their family friend, who held a master plumbing license, until Wenzler's son could obtain his master license.  Accordingly, Mrs.

7

Wenzler began the preparation for starting the business. She listed American Tech Plumbing in the 2008 edition of the Yellow Pages and obtained business cards. Wenzler said the listings contained his home telephone number and address because Mrs. Wenzler intended to run the business from a home office. After the information was submitted to the Yellow Pages, the family friend decided against joining the business. Therefore, according to Wenzler, American Tech Plumbing never actually began operating until Wenzler's son obtained his master plumbing license in May 2008.

Mrs. Wenzler testified as well. She stated that she owns and operates American Tech Plumbing and that her two sons do the actual plumbing work. However, Mrs. Wenzler also has a journeyman's plumbing license. She corroborated Wenzler's testimony about her intent to open the business around September 2007 and the delay she experienced when their friend decided against joining the business. She said she had already submitted the information to the Yellow Pages in order to comply with their listing deadline for 2008. She said that when her business plan "fell through," her listing was still in the Yellow Pages, but she was not actually doing plumbing work. Mrs. Wenzler said she did sewer cleaning work in the meantime because that type of work did not require a plumbing license. In any event, Mrs. Wenzler insisted that her husband had no role in the business at all. She testified that Wenzler had no financial interest in the company and did absolutely no work for it.

Mrs. Wenzler testified that she went to the code enforcement office before any charges were brought against Wenzler and discussed her intention to open a plumbing business with Gene Childress, the chief plumbing inspector. She said she made Childress aware of her plans, and he never mentioned that she could not use her home address or telephone number for the business. Childress testified that he recalled meeting with Mrs. Wenzler about her sewer cleaning operation, but he said they did not specifically discuss the fact that she would be running a plumbing business out of her home.

Wenzler testified that he discussed his wife's plumbing business with the attorney on staff at the code enforcement office when she first began discussing the idea of opening the business. Wenzler said he informed the attorney that Mrs. Wenzler intended to operate the business out of their home and asked if there would be "any implications" against him or any cause for concern. According to Wenzler, the attorney informed him that there was no cause for concern as long as Wenzler did not perform inspections for Mrs. Wenzler's business. Later, when the Wenzlers learned that the code enforcement office was concerned about the address listed for the business, Mrs. Wenzler obtained new business cards listing the business address at a different location. She also changed the listing in the telephone book to reflect a different address, and she began using a mobile telephone number.

Wenzler acknowledged that his son was "absolutely incorrect" when he did plumbing work without a permit or a license at the job on Tutwiler Avenue where he was cited on November 9, 2007. However, Wenzler claimed that he had nothing to do with his son's work during that time period. Wenzler's son had his own residence in a nearby town. Wenzler testified that his son was working for Forbess Plumbing, a properly licensed plumbing company, at that time because American Tech Plumbing was not yet in business. According to Wenzler, his son said that he gave the plumbing inspector the American Tech Plumbing business card because it had his telephone number on it. Wenzler testified that Forbess Plumbing was paid for the work that his son did on Tutwiler Avenue. He introduced a copy of an application for a plumbing permit for work at the Tutwiler Avenue address, dated November 13, 2007, which listed Forbess Plumbing as the contractor. Wenzler also introduced a copy of a check written to the order of Forbess Plumbing with a notation in the memo listing the address on Tutwiler Avenue. The check was dated November 20, 2007. Mrs. Wenzler also testified that her son was not working for American Tech Plumbing in connection with the job on Tutwiler Avenue.

Senior plumbing inspector Chris Mahoney, who originally investigated Wenzler and his son, also testified at the hearing. Mahoney was Wenzler's direct supervisor. Mahoney admitted he had no knowledge that Wenzler did any work for American Tech Plumbing. He also conceded that no rule prohibited plumbing inspectors' wives from working in the plumbing industry. Mahoney was aware that Wenzler's son had obtained the necessary license after his citation, and he said he had no problem with the current work in which Wenzler's son was engaged.[4]

Chief plumbing inspector Gene Childress attended the Loudermill hearing but had nothing to do with the decision to terminate Wenzler. Childress testified that, in his opinion, there was "no problem" with Mrs. Wenzler operating a plumbing business as long as it was properly licensed. However, he said that he believed it would constitute a conflict of interest if Mrs. Wenzler operated the business out of her home because Wenzler regulates plumbing contracts in his capacity as a plumbing inspector, and Childress believed that other plumbers were "certainly not going to be happy with somebody in competition with them."

---

[4]Mahoney admitted that he wrote the word "terminated" across Wenzler's locker after he was terminated but denied that he did it to embarrass Wenzler and denied that he was trying to get rid of him. However, during his employment, Wenzler had written a letter to the administrator of code enforcement complaining that Mahoney was harassing him and doing "everything he could possibly do to make [Wenzler] look bad[.]" As a result, Wenzler was removed from the direct supervision of Mahoney and placed under the supervision of another senior inspector. The administrator of code enforcement testified that "there was animosity both ways" between Wenzler and Mahoney.

Allen Medlock, the administrator of code enforcement, testified that he was solely responsible for making the decision to terminate Wenzler. He identified the code enforcement office's conflict of interest policy and said it "tells [employees] what they can and cannot do in terms of conflicts." As noted above, Medlock's written decision terminating Wenzler stated that he could not "justify in any way, form or fashion how any reasonable person would allow a plumbing business to be run out of the family home while working for the Code Enforcement Department." However, when asked whether it was permissible for Wenzler's wife to run a plumbing business, Medlock responded as follows:

> Q. Is it your testimony that Tommy Wenzler's wife was not free to engage in any plumbing work?
>
> A. No.
>
> Q. Couldn't do it?
>
> A. No. She can do it.
>
> Q. Out of her home?
>
> A. Sure.

Medlock added that "[i]f it was [him]," he would find another place to do business other than his home. However, he did not alter his initial testimony that it was acceptable for Mrs. Wenzler to be engaged in plumbing work from her home. Medlock conceded that he did not know if Wenzler was engaged in the business of American Tech Plumbing.

As for the allegation of improper communications, Wenzler was asked whether he had contacted a former employee of the code enforcement office and asked that person to "carry" the license for his son's business until his son could obtain his own license. Senior plumbing inspector Mahoney testified that it was fairly common for someone coming into the plumbing business to work under another master plumber's license. Mahoney said he "wouldn't see anything in the world wrong with it" if Wenzler's son had contacted the former employee about carrying the license for his business; however, he believed that it was wrong for Wenzler, as an employee of Shelby County government, to call and request such a favor. Wenzler admitted that he made the call to the former employee and explained that he did not believe that it was inappropriate to do so because the former employee was retired, had an inactive license, and was no longer involved in the plumbing business. Therefore, Wenzler believed that he had no influence

over the former employee or his activities.[5]

Numerous witnesses testified regarding a recently retired code inspector who had family members involved in a plumbing business while he was employed as an inspector, but who was not disciplined or charged with a conflict of interest. That inspector was not personally involved in the plumbing business while employed as an inspector, but his sons operated the business under a name that included the full name of the plumbing inspector.

Wenzler's sister and several other employees of the code enforcement office testified as well, but it is not necessary to describe their testimony for purposes of this opinion. The Civil Service Merit Board issued its third written decision in this matter in August 2013. It includes a lengthy section entitled, "Findings of Fact and Credibility Determinations." The Board recited the undisputed facts regarding Wenzler's son receiving a citation and providing a business card that listed Wenzler's home address and telephone number. The Board also mentioned the listing in the Yellow Pages. The Board found that Wenzler's son "at all times material to this matter, was engaged in the plumbing business and doing business as American Tech Plumbing." The Board also found that "[a]t all times relevant to this matter, Thomas Wenzler, Jr. and American Tech Plumbing were doing business out of the home of his father, Thomas Wenzler, Sr., Petitioner." The Board found that "[a]t all times relevant to this matter, [Mrs. Wenzler] owned and co-operated American Tech Plumbing with her son, Wenzler, Jr." The Board found that Wenzler was "acting in support of" his son and American Tech Plumbing by allowing the business to be operated from his home and by soliciting the former inspector to carry the license for American Tech Plumbing. The Board specifically relied on the introductory language from the conflict of interest policy that a "[c]onflict of interest is defined as, but not limited to, the following." The Board found:

> 23. Code Enforcement has a policy prohibiting its employees from engaging in activity which might compromise or influence their employees' impartial judgment or erode its credibility with the construction contractors that it works with on a day to day basis and whose work it must inspect and approve or disapprove according to its standards.

---

[5]Shelby County also presented evidence about another communication between Wenzler and a current code inspector with regard to his son's plumbing activity. However, the Board did not make any findings regarding the second communication or rely on it as the basis for its decision that Wenzler violated the conflict of interest policy. Our consideration of this evidence would cause us to impermissibly "substitute [our] judgment for that of the agency as to the weight of the evidence on questions of fact." Tenn. Code Ann. § 4-5-322(h)(5)(B). Therefore, we express no opinion regarding whether this evidence would be sufficient to uphold the termination of Wenzler's employment.

24.     The Board finds that Petitioner's actions in support of his son, Thomas Wenzler, Jr. and his and Mary Ellen Wenzler's business, American Tech Plumbing, as well as the publication of his address as the business address of Thomas Wenzler, Jr. and American Tech Plumbing placed his credibility and the credibility of his employer, Code Enforcement, in a compromising situation.

25.     The Board finds that Petitioner's actions in support of his son, Thomas Wenzler, Jr. and his and Mary Ellen Wenzler's business, American Tech Plumbing, as well as the publication of his address as the business address of Thomas Wenzler Jr., and American Tech Plumbing created a conflict of interest with his job as a plumbing inspector with Code Enforcement.

26.     The Board does not find Petitioner's testimony concerning his knowledge of his son's plumbing business credible. Nor, does the Board find Petitioner's testimony concerning his knowledge of his wife's involvement in his son's plumbing business to be credible.

27.     The Board finds that Thomas Wenzler, Sr. was well aware of his son's and/or his son's and wife's plumbing business and the need for it to comply with the code.

. . . .

The Board concludes that there is no possible way to carry out the duties of a plumbing inspector as a neutral enforcer of the plumbing code and at the same time have business cards, yellow pages, forms, etc., reflecting his home address and phone number as the business address for a journeyman plumber doing business as American Tech Plumbing. The fact that this son and his business operated outside the code and received a citation for code violations makes it even more egregious. A person in an enforcement position such as Petitioner must make every effort to avoid even a perception of a conflict of interest. Petitioner did not do so. Petitioner compromised Code Enforcement's credibility as a neutral and credible regulatory department of Shelby County.

In sum, the Board found that the office of code enforcement had just cause to terminate Wenzler's employment.

After reviewing the record before the Board, the chancery court concluded that

"there was no factual basis on which to base the findings of the Board" and that "[t]he findings of the Board are not supported by the record and are without any substantial or material evidence to support its decision." The chancery court found no proof in the record that Wenzler violated any of the nine points contained in the conflict of interest policy or the policy in general. The chancery court further held that the Board's credibility determinations could not be considered because "the board cannot make witness credibility determinations upon review of only the written record because two of the members of the panel rendering the August 27, 2013 decision did not participate in the administrative hearing and therefore are not in a position to make credibility determinations." Finding no substantial and material evidence to support the Board's findings, the chancery court reinstated Wenzler with full backpay and benefits from the date of termination.

Our task in reviewing whether sufficient evidence supports the Board's decision that Wenzler violated the conflict of interest policy is complicated by the fact that the conflict of interest policy does not contain a general definition of a conflict of interest. Shelby County does not contend that Wenzler committed any of the specific violations enumerated in the conflict of interest policy. Thus, the issue becomes whether Wenzler's conduct amounted to some generalized concept of a conflict of interest. Despite the lack of a definition in the conflict of interest policy itself, the Civil Service Merit Board concluded that the conflict of interest policy generally prevented employees "from engaging in activity which might compromise or influence their employees' impartial judgment or erode its credibility with the construction contractors that it works with on a day to day basis and whose work it must inspect and approve or disapprove according to its standards." Although this broad statement appears to focus on the actions of an *employee*, the Board's findings were mainly focused on the actions of Wenzler's wife and his son. The Board found that Wenzler's son "at all times material to this matter" was engaged in the plumbing business and doing business as American Tech Plumbing from Wenzler's home. Notably, the Board did not find that Wenzler, himself, was engaged in the plumbing business or doing business as American Tech Plumbing. The Board also found that "[a]t all times relevant to this matter, [Mrs. Wenzler] owned and co-operated American Tech Plumbing with her son, Wenzler, Jr." Again, this finding does not demonstrate impermissible action by Wenzler. The Board did find that Wenzler was "acting in support of" his son and American Tech Plumbing by allowing the business to be operated from his home and by soliciting the former inspector to carry the license for American Tech Plumbing. However, in our view, the solicitation of the former inspector does not demonstrate a conflict of interest because, as Wenzler noted, the former inspector was retired and no longer working in the plumbing business. Wenzler was not requesting a favor from a plumbing contractor that would be subject to his inspections. His request to the former inspector did not, in the words of the Board, erode the credibility of the code enforcement office "with the construction contractors that it works

13

with on a day to day basis and whose work it must inspect and approve or disapprove according to its standards."

The remaining question is whether the Board erred in finding that a conflict of interest existed because Wenzler was "acting in support of" American Tech Plumbing by allowing the business to be operated from his home. The Board found that Wenzler's actions in support of his son, and specifically, the use of his address as the business address for American Tech Plumbing, "placed his credibility and the credibility of his employer, Code Enforcement, in a compromising situation" and "created a conflict of interest with his job as a plumbing inspector with Code Enforcement." The Board found that "there is no possible way to carry out the duties of a plumbing inspector as a neutral enforcer of the plumbing code and at the same time have business cards, yellow pages, forms, etc., reflecting his home address and phone number as the business address for a journeyman plumber doing business as American Tech Plumbing." The Board found that Wenzler did not "make every effort to avoid even a perception of a conflict of interest," and as a result, he "compromised Code Enforcement's credibility as a neutral and credible regulatory department of Shelby County."

The Board's order is somewhat unclear as to its precise findings about Wenzler's son's conduct. The Board found that Wenzler's son was "at all times material to this matter . . . doing business as American Tech Plumbing" from Wenzler's home. The Board also found that Wenzler's son "operated outside the code" and that Wenzler "was well aware of his son's and/or his son's and wife's plumbing business and the need for it to comply with the code." Based on the Board's use of the phrase "at all times material to this matter," we infer that the Board did not believe that Wenzler's son was employed by Forbess Plumbing when he was cited for illegal plumbing work in November 2007. However, the only evidence to suggest that Wenzler's son was working for American Tech Plumbing on that date was the business card that he provided to the inspector who came to the scene, and the fact that American Tech Plumbing had a listing in the *2008* edition of the telephone book. Mrs. Wenzler testified that her son provided the business card to the inspector solely because of the telephone number listed on it. The inspector who went to the scene and acquired the card did not testify, and senior inspector Mahoney could not say how the business card was acquired. The record contains uncontradicted documentary evidence that Forbess Plumbing pulled the permit for the Tutwiler Avenue job and was paid for the job via personal check. Even though American Tech Plumbing was listed in the 2008 edition of the telephone book, Mrs. Wenzler testified that she was not operating the plumbing business when her son was cited in November 2007 because the family friend decided not to join the business. Chief plumbing inspector Childress recalled meeting with Mrs. Wenzler about her sewer cleaning business during the relevant timeframe before Wenzler was charged with a conflict of interest. We find no substantial and material evidence to support a finding that

14

Wenzler's son was doing business as American Tech Plumbing from Wenzler's home at all times material to this litigation. The Board's finding ignores the bulk of relevant evidence without a reasonable factual basis for doing so.

Under ordinary circumstances, "this Court affords 'considerable deference' to the Board's factual findings based on its determinations of credibility." *Macon*, 309 S.W.3d at 509 (citing *Davis*, 278 S.W.3d at 266). Appellate courts ordinarily afford trial courts considerable deference when reviewing issues that hinge on witness credibility because the trier-of-fact is "'uniquely positioned to observe the demeanor and conduct of witnesses'" during live testimony. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (quoting *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000)). However, in this case, due to numerous remands and the passage of time, only one of the three Board members who issued the written decision under review actually observed the witnesses' live testimony at the hearings. That one Board member did not contribute to an order containing credibility findings until 2013, approximately five years after the hearings before the Board in 2008. The 2013 order specifically states that "[o]n July 9, 2013, the Board reviewed and considered the transcripts and exhibits of the hearing conducted in this matter on September 4, 2008, and November 20, 2008, and now issues the following finding of fact, conclusions and decision."

> [A]ppellate courts are not required to give similar deference to a trial court's findings of fact based on documentary evidence such as depositions, transcripts, or video recordings. When findings are based on documentary evidence, an appellate court's ability to assess credibility and to weigh the evidence is the same as the trial court's. Accordingly, when factual findings are based on documentary evidence, an appellate court may draw its own conclusions with regard to the weight and credibility to be afforded that documentary evidence.

*Kelly*, 445 S.W.3d at 693 (citations omitted). Because two of the three Board members based their decision solely on documentary evidence, the Board's credibility findings were not entitled to the same considerable deference that we would ordinarily give to the Board. Having reviewed the same transcripts reviewed by the Board, we find no basis for concluding that Wenzler's son was doing business as American Tech Plumbing from Wenzler's home at all times material to this litigation.

The lingering question is whether sufficient evidence supports the Board's finding that Wenzler engaged in a conflict of interest simply by allowing a plumbing business to be run out of his home while working for code enforcement. Several employees of the code enforcement office admitted that there was nothing wrong with Wenzler's wife operating a properly licensed plumbing business. Senior inspector Mahoney, chief

plumbing inspector Childress, and administrator Medlock all confirmed that Mrs. Wenzler could operate a plumbing business without violating the conflict of interest policy. American Tech Plumbing was properly licensed at the time of the hearing. Childress believed that operating the business from Mrs. Wenzler's home would constitute a conflict of interest, but administrator Medlock testified that Mrs. Wenzler could run the plumbing business from her home. Given that it was undisputed that Wenzler's wife was permitted to operate a plumbing business, we conclude that simply listing her home address as the business address, rather than some other location, did not establish a conflict of interest on the part of Wenzler. The record contains no proof that any plumbing contractors or members of the public would be aware of Wenzler's personal address or telephone number and link him to American Tech Plumbing simply based on the information on the business cards and in the telephone book. Even if someone did make the connection, however, it is not reasonable to conclude that no conflict of interest exists if an inspector's wife runs a plumbing business, but a conflict does exist if the business card lists her home address and telephone number. The undisputed proof in the record was that Wenzler had no financial interest and no actual involvement with American Tech Plumbing. The record does not contain evidence furnishing a reasonably sound factual basis for concluding that Wenzler violated the conflict of interest policy. *See Macon*, 309 S.W.3d at 509. Therefore, we agree with the chancery court's finding that the Board's decision is unsupported by evidence that is substantial and material in light of the entire record. The chancery court properly applied the applicable standard of review and did not simply substitute its judgment for that of the Board.

Shelby County also argues that reinstating Wenzler to his former position with full backpay and benefits results in "a gross miscarriage of inequity" in this case because Wenzler was terminated in 2008, and the chancery court's order reinstating him was not entered until 2014. Shelby County claims that the majority of the delay in these proceedings was caused by the series of remands by the chancery court and by Wenzler failing to prosecute his case in a timely manner. As a result, Shelby County claims that it is inequitable to require it to pay nearly six years in backpay and benefits to Wenzler. However, from our review of the record, it does not appear that Wenzler was primarily responsible for the delay either. After he filed his original petition for judicial review of the Board's decision, Shelby County filed a motion to stay the proceedings until the Supreme Court ruled on a particular issue in a separate case. The motion to stay was filed in 2009, and even after the Supreme Court resolved the aforementioned issue a few months later, it appears that neither party took any substantive action in the case until 2012. At that point, the case was placed on the chancery court's dismissal docket, but no one appeared on behalf of Shelby County at the hearing. Wenzler's attorney did appear and filed a memorandum in support of his original petition shortly after the hearing. We reject Shelby County's assertion that the trial court abused its discretion in failing to

16

dismiss the case for failure to prosecute.  Shelby County does not cite any relevant authority in support of its argument that it is entitled to reduce the amount of backpay owed to Wenzler because of the delay in this case, and we reject that argument as well.

## V. CONCLUSION

For the aforementioned reasons, the decision of the chancery court is hereby affirmed and remanded for further proceedings.  Costs of this appeal are taxed to the appellant, Shelby County, and its surety, for which execution may issue if necessary.


_____
BRANDON O. GIBSON, JUDGE