The Petition to Rehear filed by the Appellants, Doyle H. Brandt and Martha J. Brandt, has been considered and is respectfully denied.

**Sonya Lynn BUNCH**

v.

**Stephen Shawn BUNCH.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Assigned on Briefs April 23, 2008.

June 30, 2008.

Permission to Appeal Denied by Supreme Court Jan. 20, 2009.

Michael C. Murphy, Morristown, Tennessee for the Appellant, Stephen Shawn Bunch.

Denise Terry Stapleton, Morristown, Tennessee for the Appellee, Sonya Lynn Bunch.

## OPINION

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

After six years of marriage, Sonya Lynn Bunch ("Wife") sued Stephen Shawn Bunch ("Husband") for divorce. The Trial Court, *inter alia*, granted Wife a divorce, awarded Wife transitional alimony, award-ed Wife attorney's fees, and divided the parties' marital property and debts. Husband appeals the division of marital property. We affirm.

### Background

Wife and Husband were married in May of 1999. No children were born of the marriage. Wife and Husband separated in October or November of 2005. Wife sued Husband for divorce and the case was tried without a jury.

During the marriage, Wife and Husband lived in a house owned by Wife's parents located at 624 Lincoln Avenue, Morristown, Tennessee ("the House"). Patsy Ann Whitlow, Wife's mother, testified at trial regarding the House. Ms. Whitlow testified that the House was appraised at approximately $58,000 or $59,000 and was insured for approximately $60,000. Ms. Whitlow testified that she and her husband entered into an agreement with Wife and Husband regarding the House in 2000. The Whitlows first allowed Wife and Husband to live in the House rent free for one year and then entered into an agreement that would allow Wife and Husband to purchase the house. Ms. Whitlow stated "it was kind of a rent to own thing. . . ." Ms. Whitlow stated: "My husband made it real clear that night that it would be—not be put in [Wife and Husband's] names until it was paid for." Ms. Whitlow explained: "My husband had inherited [the House], and he always wanted it in the family. And, so, until it was paid for that it was going to remain in his name." Ms. Whitlow had a promissory note ("the Note") prepared by an attorney with regard to the House agreement, which Wife and Husband both signed. Although the Note does not reference the House, Ms. Whitlow testified: "I'm not denying it was for them to purchase the house, you know.

And that's what the agreement is. And, it, you know, it would've been theirs."

Ms. Whitlow testified that there have been times when Wife and Husband did not make the payments required under the Note. The Whitlows received no payments on the Note from March of 2004 through October of 2005, when Wife and Husband separated. Ms. Whitlow testified that Wife still will owe the money on the House after the parties divorce even though Wife has not been able to make the payments under the Note for some time.

Ms. Whitlow testified that she and her husband loaned Wife and Husband money for other purposes as well. Ms. Whitlow stated that when Wife and Husband "traded cars, we let them have money for a down payment. And then instead of making payments, they paid back the money we had given them for a down payment on the car." Ms. Whitlow testified that the money loaned for the car had nothing to do with the Note.

Wife, who was thirty-four years old at time of trial, testified that she worked full-time for HealthStar Physicians checking in patients and handling phone calls. Wife testified that she was making eleven dollars an hour working at HealthStar Physicians. At the time of trial, Wife also was attending Walters State Community College to complete training to obtain a job working on an ambulance as an EMT IV. Wife expected to graduate within a couple of weeks of trial and hoped to obtain a new job. Wife testified that she had a 401k that as of December of 2006 had an approximate value of $1,630.

When asked why the parties had not made some of the payments due under the Note, Wife claimed that she did not make the House payments because she was paying extra money on other bills. However, when asked, Wife could not tell what other bills she was paying. She stated "I was paying extra money on bills, or some— some kind of reason, I'm sure."

Husband, who was thirty-five years old at the time of trial, testified that he worked for Food City and earned approximately $38,000 in 2006. Husband testified that when the parties separated, Husband's 401k was valued at approximately $18,320 and by the time of trial the value had increased to approximately $27,000.

Husband testified that he deposited money into the parties' checking account on a regular basis for the House payment and was not aware that payments under the Note were not being made until after the parties separated. Husband testified that he and Wife were paying seven percent interest on the Note and that he thought that they had paid over $32,000 toward the House. Husband also testified that he and Wife made approximately $7,400 worth of renovations to the House including such things as fencing in the backyard, installing a new heat pump, remodeling a bathroom, removing carpet, and then sanding and revarnishing hardwood floors.

After trial, the Trial Court entered an order, *inter alia,* granting Wife a divorce, awarding Wife transitional alimony, awarding Wife attorney's fees, and dividing the parties' marital property and debts. As pertinent to this appeal, the Trial Court held in its June 7, 2007 Judgment:

> 5. Husband is awarded the amount of $3,700.00 from Wife representing one-half of the value of the improvements made to the premises owned by Wife's parents, Mr. and Mrs. Whitlow, during the parties' use of the real property during the marriage. Wife shall continue to occupy the premises and make use of the improvements thereon. Husband maintains no interest in the real property located at 624 Lincoln Avenue.

6. Wife shall be responsible for payment as due of the remaining balance of the promissory note in favor of Mr. and Mrs. Whitlow dated May 1, 2000. Wife shall hold Husband harmless from any liability in connection therewith.

In its Memorandum Opinion incorporated into the Judgment by reference, the Trial Court specifically found and held, *inter alia:*

During the course of the marriage and prior to separation, [Husband and Wife] resided at 624 Lincoln Avenue, Morristown, Tennessee. This real property is owned by [Wife's] parents, Mr. and Ms. Whitlow. The evidence preponderates in favor of a finding that in 2000 the Whitlows and [Husband and Wife] entered into a verbal contract which the parties have referred to as "rent to own." In connection with the parties' parol agreement, [Husband and Wife] executed a promissory note in favor of Mr. and Ms. Whitlow dated May 1, 2000, in the original principal amount of $58,000.00. No other writing evidencing a rental contract exists.

[Husband and Wife] made monthly payments to the Whitlows from June 2000 through March 2004 in the amounts of $500.00 each. Ms. Whitlow referenced these payments by written receipt indicating "house payment." No payments have been made with regard to the promissory note since March 2004.

The evidence preponderates in favor of a finding that from April 2004 through October 2005, at which time the parties separated, [Husband] continued to deposit the primary amount of his income into the parties' joint account. [Wife] took the responsibility of paying the monthly expenses from the joint account. No payments were made regarding the promissory note to the Whitlows

during this 19 month period. [Husband] claims that he is entitled to reimbursement of all or a portion of the $9,500.00 which should have been paid with regard to the "rent to own" contract. [Wife] testified that the funds on deposit in the parties' joint account for the 19 month period in question were used for other marital debts.

Pursuant to T.C.A. 29–2–101, no action shall be brought upon a contract for sale of land or the making of any lease for a longer term than one year unless the promise or agreement, or some memorandum or note thereof, is in writing. As no writing other than the promissory note exists, this Court concludes that as between the parties to this action, no enforceable real estate contract existed.

(footnotes omitted).

Husband filed an appeal to this Court.

### *Discussion*

■ Husband raises one issue in his Statement of the Issue, which we quote: Whether the Lower Court erred in the fair and equitable division of marital assets and obligations. Within the argument section of his brief, Husband mentions other potential issues. However, as this Court explained in *Hawkins v. Hart:*

In order for an issue to be considered on appeal, a party must, in his brief, develop the theories or contain authority to support the averred position as required by Tennessee Rules of Appellate Procedure 27(a). "Where a party makes no legal argument and cites no authority in support of a position, such issue is deemed to be waived and will not be considered on appeal." *Branum v. Akins,* 978 S.W.2d 554, 557 n. 2 (Tenn. Ct.App.1998); *see also Morris v. Snodgrass,* 886 S.W.2d 761 (Tenn.Ct.App. 1994); *Maryville Housing Authority v.*

*Ramsey,* 484 S.W.2d 73 (Tenn.Ct.App. 1972). Courts have consistently held that issues must be included in the Statement of Issues Presented for Review required by Tennessee Rules of Appellate Procedure 27(a)(4). An issue not included is not properly before the Court of Appeals.

*Hawkins v. Hart,* 86 S.W.3d 522, 531 (Tenn.Ct.App.2001). We, therefore, will address only the issue properly raised in Husband's Statement of the Issue.

Wife raises an issue in her Statement of the Issues requesting an award of attorney's fees on appeal.

Our Supreme Court set out the standard of review to be used when dealing with issues regarding the distribution of marital property stating:

> This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera,* 944 S.W.2d 379, 389 (Tenn.Ct. App.1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R.App. P. 13(d); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn.1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts,* 827 S.W.2d 788, 795 (Tenn.Ct. App.1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.,* 228 S.W.3d 139, 143 (Tenn.Ct.App.2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.,* 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt,* 81 S.W.3d 741, 744–45 (Tenn.2002).

*Keyt v. Keyt,* 244 S.W.3d 321, 327 (Tenn. 2007).

Courts must look to Tenn.Code Ann. § 36–4–121 when determining how to distribute property in a divorce. In pertinent part, Tenn.Code Ann. § 36–4–121 provides:

> (b) For purposes of this chapter:
>
> (1)(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of the filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.... All marital property shall be valued as of a date as near as possible to the date of entry of the order finally dividing the marital property.
>
> (B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, and the value of vested and unvested pension, vested and unvested stock option rights, retirement or other

fringe benefit rights relating to employment that accrued during the period of the marriage.

* * *

(c) In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn.Code Ann. § 36–4–121 (2005).

■ A trial court has wide discretion in dividing the interest of the parties in marital property. *Barnhill v. Barnhill,* 826 S.W.2d 443, 449 (Tenn.Ct.App.1991). As noted by this Court in *Morton v. Morton,* when dividing marital property:

The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, *Cohen v. Cohen,* 937 S.W.2d 823, 832 (Tenn.1996); *Ellis v. Ellis,* 748 S.W.2d 424, 427 (Tenn. 1988), or because each party did not receive a share of every item of marital property. *Brown v. Brown,* 913 S.W.2d [163] at 168.... In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results. *See Thompson v. Thompson,* 797 S.W.2d 599, 604 (Tenn.App.1990).

*Morton v. Morton,* 182 S.W.3d 821, 833–34 (Tenn.Ct.App.2005) (quoting *King v. King,* 986 S.W.2d 216, 219 (Tenn.Ct.App.1998)).

Husband contends that the Trial Court committed errors with regard to the distribution of the marital property specifically as to the valuation of Husband's 401k and as to issues regarding the House. First, Husband claims that the Trial Court erred in valuing Husband's 401k as of the date of the trial rather than the date that the parties separated.

■ As this Court explained in *Dunlap v. Dunlap:*

The statute governing the distribution of marital property requires that property be valued "as of a date as near as rea-

sonably possible to the final divorce hearing date." *Wright v. Quillen,* 909 S.W.2d 804, 809 (Tenn.App.1995) (quoting T.C.A. § 36–4–121(b)(1)(A) (1991)). In construing the meaning of the term "final divorce hearing date," this court has held that the appropriate date for valuing the parties' property is the date a decree is entered declaring the parties divorced.

*Dunlap v. Dunlap,* 996 S.W.2d 803, 817 (Tenn.Ct.App.1998). Spouses may legally separate and have marital property distributed prior to a final divorce hearing date pursuant to Tenn.Code Ann. § 36–4–121(a)(2) (2005). However, spouses who are not legally separated are still married.

 In the case now before us, Wife and Husband were not legally separated prior to trial. Therefore, the Trial Court correctly valued Husband's 401k as of a date as near as reasonably possible to the final divorce hearing.

Husband also complains that the Trial Court erred in finding and holding that the agreement that Wife and Husband had with the Whitlows constituted a rent-to-own contract on the House. In its Memorandum Opinion the Trial Court held, in pertinent part:

Pursuant to T.C.A. 29–2–101, no action shall be brought upon a contract for sale of land or the making of any lease for a longer term than one year unless the promise or agreement, or some memorandum or note thereof, is in writing. As no writing other than the promissory note exists, this Court concludes that as between the parties to this action, no enforceable real estate contract existed.

As pertinent to this issue, Tenn.Code Ann. § 29–2–101 provides:

**29–2–101. Writing required for action.**—(a) No action shall be brought:

\* \* \*

(4) Upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one (1) year; . . .

\* \* \*

unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party. In a contract for the sale of lands, tenements, or hereditaments, the party to be charged is the party against whom enforcement of the contract is sought.

Tenn.Code Ann. § 29–2–101(a) (Supp. 2007).

 The case now before us on appeal, however, is not an action seeking to enforce a contract for the sale of land. Neither Husband nor Wife is attempting in this suit to enforce the Whitlows' agreement to deed the House to Husband and Wife upon full payment of the Note. Nor are the Whitlows, who are not parties to this suit, seeking in this suit to enforce Husband and Wife's obligation to make payments under the Note. The Trial Court found that neither Husband nor Wife have any ownership interest in the House and the evidence does not preponderate against that finding. As such, the House was not and could not be subject to classification and distribution in this divorce.

 The Note, however, was subject to distribution in the divorce. The validity of the Note itself was not an issue before the Trial Court, nor is it before this Court. The Trial Court clearly found that Husband and Wife's obligations under the Note constituted marital debt. The evi-

dence does not preponderate against this finding. The Trial Court then ordered: "Wife shall be responsible for payment as due of the remaining balance of the promissory note in favor of Mr. and Mrs. Whitlow dated May 1, 2000. Wife shall hold Husband harmless from any liability in connection therewith." As a result of this order should the Whitlows attempt to seek payment from Husband under the Note, Husband will be able in turn to sue Wife for such payment.

■ Husband also claims that he is entitled to a credit for the monies he put into the parties' joint account for the House payments which unbeknownst to him were not being used to make payments on the Note. Wife testified that she used those monies to pay other marital bills. Those monies were not in the possession of either party at the time of the divorce, and, as such, were not subject to distribution in the divorce. *See Flannary v. Flannary,* 121 S.W.3d 647, 650 (Tenn.2003). Additionally, the only evidence in the record regarding where these monies went is Wife's testimony that they were used to pay other marital bills, for which Husband as well as Wife would have been liable.

Taking into account the overall distribution of marital assets and marital debts, we are unable to find that the Trial Court abused its discretion or that the overall property distribution was not equitable. We, therefore, affirm the Trial Court's June 7, 2007 Judgment.

Wife has asked for her attorney fees on appeal. In the exercise of our discretion, we decline to award attorney's fees to either party.

### *Conclusion*

The Trial Court's judgment is affirmed and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Stephen Shawn Bunch, and his surety.