# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
March 10, 2015 Session

## KERRIE JANEL WADE v. VERNON FRANKLIN WADE, JR.

**Appeal from the Chancery Court for Benton County**
**No. 2613    Paul G. Summers, Judge**

---

### No. W2014-01098-COA-R3-CV – Filed April 28, 2015

---

This is a divorce action.  The trial court designated Father primary residential parent of the parties' minor children and denied Mother's request for alimony.  We affirm designation of Father as primary residential parent, reverse the trial court's denial of Mother's request for alimony, and remand this matter to the trial court to fashion an award of transitional alimony consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Reversed in Part and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which KENNY ARMSTRONG, J., joined. BRANDON O. GIBSON, J., filed a separate opinion concurring in part dissenting in part.

Charles G. Blackard, III, Franklin, Tennessee, for the appellant, Kerrie Janel Wade.

C. Timothy Crocker, Michael A. Carter, J. Noble Grant, III and Ryan L. Hall, Milan, Tennessee, for the appellee, Vernon Franklin Wade, Jr.

## MEMORANDUM OPINION[1]

---

[1] This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

This appeal arises from a divorce action following a twenty-year marriage. Appellant Kerrie Janel Wade ("Mother") and Appellee Vernon Franklin Wade, Jr., ("Father") were married in August 1992, when Mother was nineteen years old and Father was twenty-six years old. Four children were born of the marriage. Three of the children were minors when Mother filed a complaint for divorce in the Chancery Court of Benton County on May 4, 2012. In her complaint, Mother alleged irreconcilable differences and inappropriate marital conduct as her grounds for divorce. She asserted that the parties' children resided with her and prayed to be named primary residential parent of the children; for Father to be awarded reasonable liberal visitation; for child support pursuant to the child support guidelines; for an equitable division of the parties' personal property and debt; and for approval of any marital dissolution agreement that the parties might file. The parties and their children resided in the same household when Mother filed her complaint, and the children were homeschooled by Mother.

Father answered and filed a counter-complaint on May 14, 2012. Father denied Mother's allegations of irreconcilable differences and inappropriate martial conduct and asserted that the parties' two older children resided with him. He prayed to be named primary residential parent, admitted that he was able to provide financially for the children, and denied that Mother was entitled to attorney's fees. He counter-claimed for a divorce on the grounds of cruel and inhumane conduct and adultery, and prayed for child support pursuant to the child support guidelines. Father also prayed that all the parties' real and personal property be awarded to him, for attorney's fees, and for costs.

The primary focus of the proceedings that followed in the trial court concerned the designation of the children's primary residential parent, the parenting schedule, and Mother's request for alimony. After hearings in November 2013, by order entered January 6, 2014, the trial court awarded Father a divorce on the grounds of inappropriate marital conduct and adultery. The trial court designated Father primary residential parent of the parties' three minor children, adopted his proposed permanent parenting plan, and lifted a June 2012 no-contact order preventing Mother's paramour, Sharon "Deanie" Richardson ("Ms. Richardson") from having contact with the parties' children. The trial court ruled, however:

> the Permanent Parenting Plan shall include a paramour provision stating that neither party may have an overnight guest at their residence with whom they have any type of physical or romantic relationship, other than with someone to whom they are legally married as recognized by Tennessee law while they have any of the parties' minor children at their respective homes[.]

The trial court also affirmed and incorporated into the final decree of divorce an agreed no-contact order confirming there should be no contact between the parties' three minor children

2

and Clyde W. Richardson ("Mr. Richardson"), Ms. Richardson's father, who allegedly abused Ms. Richardson when she was a child.

The trial court determined that, "due to the economic disparity between Father and Mother," Mother was entitled to a downward deviation in her child support obligation, which it reduced to $0 for an eighteen month period to begin on December 1, 2013. The trial court ordered that after the expiration of the eighteen-month period Mother would pay child support to Father based on the parties' income. The trial court declined to award alimony to Mother upon finding that Father does not have the ability to pay alimony and that, because Mother was no longer homeschooling the parties' children, her "impediment to earning an income" was removed. The trial court also based its determination to deny alimony on the degree of fault it assigned to Mother. It approved the property division established by the parties' martial dissolution agreement ("MDA"); denied the parties' requests for attorneys' fees or discretionary costs; and divided the costs equally between them.

In February 2014, Mother filed a motion to alter or amend the final decree of divorce pursuant to Rule 59 of the Tennessee Rules of Civil Procedure. In her motion, Mother asserted that the trial court erred in naming Father primary residential parent and that it was in the best interests of the children to designate her as primary residential parent; that the reduction of her parenting time was not in the children's best interests; that removing the two youngest children from homeschooling and placing them in public school was not in their best interests; that the "paramour provision [was] one-sided" and in violation of her constitutional rights; and that the trial court erred by failing to award her alimony.

The trial court heard Mother's motion in April 2014 and partially granted it by order entered May 19, 2014. In its May order, the trial court amended the paramour provision to apply only to Ms. Richardson "[a]fter careful consideration of [Ms. Richardson's] mental stability[] and potential effect upon the children[.]" The trial court ruled that Ms. Richardson could "not be present overnight during the Mother's parenting time," but that she "may be present at any other times and may interact with the children at other times under the direct and present supervision of the Mother." The trial court otherwise affirmed its previous judgment which included designating Father as the primary residential parent of the parties' three minor children and denying Mother's prayer for alimony. Mother filed a timely notice of appeal to this Court.

**Issues Presented**

Mother presents two issues for our review, as restated by the Court:
1. Whether the trial court erred in designating Father as primary residential parent of the parties' three (3) minor children.

2. Whether the trial court erred in failing to award Mother rehabilitative and/or transitional alimony.

## Standard of Review

Our review of a trial court's findings of fact in a non-jury case is *de novo* upon the record with a presumption of correctness. Tenn. R. App. P. 13(d); *Kelly v. Kelly*, 445 S.W.3d 685, 691-692 (Tenn. 2014). We will affirm the trial court's factual findings unless the evidence preponderates to the contrary. *Kelly*, 445 S.w.3d at 691-692. We review the trial court's conclusions of law, however, *de novo* with no presumption of correctness. *Id*.

## Discussion

We turn first to Mother's contention that the trial court erred by designating Father primary residential parent of the parties' three minor children. The courts have long-recognized that "decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors[.]" *Id*. (citation omitted). Trial court judges are in the best position to evaluate the facts because they "have the opportunity to observe the witnesses and make credibility determinations[.]" *Id*. Accordingly, the determination of the details of a parenting plan is within the trial court's broad discretion and will not be reversed absent an abuse of discretion. *Id*. "'It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court.'" *Id*. (quoting *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013) (quoting *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001))). Under the abuse of discretion standard of review, a trial court's judgment will not be reversed on appeal unless the trial court "applie[d] an incorrect legal standard, reache[d] an illogical conclusion, base[d] its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Id*. (citations omitted). When establishing a residential parenting plan, a trial court abuses its discretion "'only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record.'" *Id*. (quoting *Armbrister v. Armbrister*, 414 S.W.3d at 693 (quoting *Eldridge v. Eldridge*, 42 S.W.3d at 88)).

Although the trial court in this case did not individually assign its factual findings to the factors specifically enumerated in Tennessee Code Annotated § 36-6-106 (now codified, as amended, at Tennessee Code Annotated § 36-6-404(b), effective July 1, 2014), the parties do not dispute that the trial court's findings reflect its consideration of the statutory factors. We begin our review of the trial court's orders by noting its conclusion that there was "little doubt that . . . both parents love their children." Additionally, although it found that Mother previously had "shown a willingness to disregard her caretaking responsibilities for the

4

purpose of pursuing her own self[-]interests[,]" the court's ruling is predicated primarily on the findings and recommendations of Dr. Jay Woodman, the family's counselor; the importance the court assigned to "maintaining a level of normality and continuity in Big Sandy"; and its assessment of the children's welfare and best interests, which, in accordance with Tennessee Code Annotated § 36-6-401, is the court's primary concern when making parenting decisions.

In its orders of January and May 2014, the trial court found that the parties had raised their children in a small Southern Baptist church and that Father worked as an engineer while Mother was a homemaker; that Mother was primarily responsible for homeschooling the parties' children while father helped in subjects such as math and with field trips and extra-curricular activities; and that it "came as a shock to Father" when Mother filed for divorce after she had become involved in an extramarital relationship with Ms. Richardson. The trial court found that Ms. Richardson, who was institutionalized after an attempted suicide in April 2011, was "unstable" and a "potentially . . . volatile element in the lives of the children." It additionally noted Dr. Woodman's finding that "there was a dichotomy between the two older children and the two younger children regarding their feelings for Mother…" The older children appeared to protect the younger children from knowledge of Mother's extramarital relationship.

It also noted Dr. Woodman's assessment that the older children did not share the same value system as Mother and that the children should not be separated. The trial court additionally observed Dr. Woodman's conclusion that Mother had changed in many ways and that "the other changes in Mother were more distressing than her … lifestyle."

The trial court found that Father had a large, supportive family in the Big Sandy area that was "a built-in support group," and it is not disputed that Mother had relocated to Nashville. The trial court further found that Father "maintained an amicable relationship with Mother's parents[]" who also lived in the West Tennessee area and that Father supported the children having a relationship with Mother. The trial court stated that "cogent factors" supporting its determination were the children's needs for continuity in Big Sandy and the opinions expressed by Dr. Woodman.

Dr. Woodman testified during the November 2013 trial of this case that both Mother and Father were cooperative and responsive. As noted above, Dr. Woodman testified that there was a distinct difference between the older and younger children with respect to their understanding of the issues between their parents. He further stated that "one of the things that was clearly problematic" was that one of the reasons that the children were homeschooled was to "shelter [them] from other parts of society that [Mother and Father] thought weren't reasonable. [Mother and Father] wanted the opportunity to encourage the children in their own faith and their own values and in their own belief system." Dr.

5

Woodman testified that Father was "trying to encourage" the children to maintain a relationship with Mother and that "he wasn't disclosing the issue that he was upset about with the mother[.]" He testified that the older children were "clearly . . . conflict[ed]" by their parents' separation in light of the values that they had been taught, particularly by Mother. Dr. Woodman stated that the question of Mother's relocation to Nashville was also a difficulty. He further testified that Mother had initially "indicated that she felt that [it] was fine" for the children to be in the company of Ms. Richardson's father, who both Mother and Father believed had sexually abused Ms. Richardson when she was a child, and that Mother subsequently agreed that the children would not be in Mr. Richardson's company. He recommended that, in light of the entire family situation, it was in the best interests of the children to be together. The trial court asked Dr. Woodman:

> So when you make a determination about the best interests of the children, you're putting all of those factors, love, emotions, financial, equipment, distance, educational level, age of the children, all those factors into coming up with an opinion about these people in this particular scenario, in this particular case; is that accurate?

Dr. Woodman replied: "Absolutely, yes, sir."

Upon review of the record, we cannot say the evidence preponderates against the findings of the trial court or that the trial court abused its discretion by designating Father primary residential parent. We affirm on this issue.[2]

We next turn to the trial court's ruling with respect to alimony. We begin our discussion of this issue by observing that Mother did not assert a claim for alimony in her May 2012 complaint and that the record does not contain an amended complaint. However, on May 16, 2012, Mother filed a motion for spousal support *pendente lite* and, after a hearing on May 25, the trial court entered an agreed order providing that Father would pay Mother support in the amount of $1,000 per month *pendente lite*. Upon review of the record, we find that the matter of alimony clearly was tried by consent as provided by Tennessee Rules of Civil Procedure 15.02.

In its January 2014 order, the trial court found:

---

[2] In the argument section of her brief, Mother argues that the trial court erred by not awarding her sufficient alternative residential parenting time and with respect to the "paramour provision." Mother did not raise these issues in her statement of the issues, however. An issue that is not included in the Statement of the Issues "is not properly before the Court of Appeals[,]" and is waived. *Bunch v. Bunch*, 281 S.W.3d 406, 410 (Tenn. Ct. App. 2008).

6

Mother has been unable to find a job in which she was able to work more than sixty (60) hours per month at a rate of $9.50 per hour because Mother has been teaching the younger two girls during the week. Mother wants to pursue finishing her college degree, but due to the fact that Mother was still married to Father, Mother's monthly income precluded her from gaining any financial aid which would make her able to attend the classes necessary to do so. The Court finds that Father's expenses are possibly greater than his income and that Father's inability to pay alimony is obvious. The Court finds that Father has spent in excess of Seventy Thousand and 00/100 Dollars ($70,000.00) on the divorce that Mother filed. The Court finds that Mother does not have a realistic financial sense in light of her income of less than One Thousand Dollars ($1,000.00) per month and the encumbrance of a Five Hundred Dollar ($500.00) plus monthly car note.

The trial court further stated:

There shall be no alimony awarded to Mother. The Court finds that Father does not have the ability to pay alimony. The Court further finds that the main reason for Mother's inability to provide for herself is the fact that she was unable to work outside the home due to her homeschooling of the parties' two younger minor children. Now that Mother no longer has such an impediment to her earning an income, Mother can earn suitable income to support herself. The lack of alimony also reflects the degree of fault of each of the parties to the divorce. Father was a faithful and providing husband who provided to Mother. It is Mother who chose to pursue an adulterous affair and leave the marital residence.

Although the trial court declined to award alimony to Mother, it granted Mother a downward deviation in her child support obligation to $0 for a period of eighteen months "due to the economic disparity between Father and Mother[.]"

It is well-settled that an alimony award depends on the circumstances of each case, and that the financial need of the recipient spouse and the obligor spouse's ability to pay are the primary considerations. *Burlew v. Burlew*, 40 S.W.3d 465, 472 (Tenn. 2001). When determining what type and the amount of alimony to be awarded, the trial court must balance several statutory factors, including those enumerated in Tennessee Code Annotated § 36–5–121.[3] Notwithstanding a preference for rehabilitative alimony, the type and amount of

---

[3] Section 36–5–121(i) provides:
In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

alimony to be awarded remain largely within the discretion of the trial court. *Id*. at 470. On appeal, we will not alter a trial court's award of alimony absent an abuse of discretion. *Id*.

It is not disputed in this case that Mother had an extramarital affair. However, as the trial court found, the economic disparity between Mother and Father is considerable. It is undisputed that Father earns approximately $7,000 per month while Mother testified that she was currently earning approximately $650 per month. Additionally, Mother spent twenty years as a homemaker and homeschooled the parties' children. As the trial court noted, Mother testified that she would like to complete college and we observe that Mother also testified that she was seeking employment opportunities. Mother stated that her living expenses totaled approximately $3,333 per month and that she sought temporary support for approximately twelve to eighteen months to allow her to complete college and secure employment.

---

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36–4–121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

8

Although the trial court stated that "Father's expenses are *possibly* greater than his income," the trial court made no findings with respect to the amount, nature, or necessity of Father's expenses other than his litigation costs. It also made no findings with respect to each party's assets or the provisions made with respect to the division of martial property. It is undisputed, moreover, that Father's monthly income is more than ten times greater than Mother's and that Father's earning capacity is far greater than Mother's. Additionally, the trial court placed great emphasis in its order on Mother's fault stating that "the lack of alimony also reflects the degree of fault of each of the parties to the divorce. Father was a faithful and providing husband who provided to Mother. It is Mother who chose to pursue an adulterous affair and leave the martial residence." Although Tennessee Code Annotated § 36-5-121(i)(11) gives the trial court the discretion to consider fault when fashioning an award of alimony, fault is but one of numerous statutory factors.

In light of the totality of this record, including the economic disparity between the parties, the length of their marriage, and Mother's contributions as a homemaker and homeschool parent for nearly twenty years, we conclude that the trial court abused its discretion by denying Mother's request for transitional or rehabilitative alimony for a period of twelve to eighteen months. We find an award of transitional alimony for a period of eighteen months is appropriate in this case. We reverse the trial court's judgment insofar as it declines an award of alimony to Mother and remand this matter for further proceedings to determine the amount of transitional alimony to be awarded in light of the economic equities and the division of the parties' property.

## Holding

We, therefore, affirm the trial court's designation of Father as the primary residential parent of the parties' minor children. We reverse the trial court's judgment denying Mother's request for alimony and remand this matter to the trial court to fashion an award of transitional alimony to Mother for a period of eighteen months, consistent with this Opinion. Costs on appeal are taxed one-half to the Appellee, Vernon Franklin Wade, Jr., and one-half to the Appellant, Kerrie Janel Wade, and her surety, for which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE