# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs April 4, 2016

## IN RE ANICIA B.

**Appeal from the Juvenile Court for Sullivan County**
**No. J39722     Mark Toohey, Judge**

_____

**No. E2015-01424-COA-R3-PT**
**FILED-JUNE 16, 2016**

_____

The trial court terminated Mother's parental rights based on the grounds of abandonment by failure to visit, abandonment by failure to provide a suitable home, substantial noncompliance with the permanency plan, and persistent conditions and based on the trial court's finding that it was in the child's best interest to terminate Mother's parental rights. Mother appealed. We affirm.

**Tenn. R. Civ. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which J. Steven Stafford, P.J., W.S., and Charles D. Susano, Jr., J., joined.

Jared A. Williams, Kingsport, Tennessee, for the appellant, Annalin R.

Herbert H. Slatery III, Attorney General and Reporter, and Rebekah A. Baker, Senior Counsel, for the appellee, Tennessee Department of Children's Services.

Claire A. Addlestone, Kingsport, Tennessee, guardian ad litem for the minor, Anicia B.

## MEMORANDUM OPINION[1]

---

[1] Tenn. R. Ct.App. 10 states:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is

# I. BACKGROUND

Annalin R.[2] ("Mother") gave birth to Anicia B. in July of 2012 in Kingsport, Tennessee. Robert B. is the father ("Father"). Two or three months thereafter, Mother and Father were evicted from their apartment. Mother left Anicia in the care of Mrs. Hurd while they were trying to move to Massachusetts.[3] Mother claims Ms. Hurd later refused to return the child to her and that Mother contacted the police.

Mother remained in Tennessee. On November 14, 2012, the Department of Children's Services ("DCS") received a referral for allegations of abandonment and parental drug addiction. Immediately thereafter, DCS created a non-custodial permanency plan that required Mother to cooperate, supervise Anicia at all times, remain drug free, participate in parenting classes, meet Anicia's physical and emotional needs, and obtain a home. Mother participated in an alcohol and drug assessment, but she did not comply with the assessment's recommendations for outpatient substance abuse counseling regarding addiction and coping skills and participation in narcotics anonymous. On November 21, 2012, Mother failed a second drug test for marijuana and refused to take two other drug screens. According to her testimony, Mother was not allowed to leave the DCS office with Anicia until she found someone who would supervise her. No in-state person was found, so Anicia was removed from Mother and placed with the Hurds. A dependency and neglect petition was filed December, 6, 2012 and Anicia was eventually adjudicated dependent and neglected by an order signed on September 27, 2013. According to an uncontradicted affidavit filed by Kim Huening, Mother admitted to taking percocet and loritab without a prescription and to being an addict. Dr. Suzanne Smith, who provided Mother's Suboxone treatment[4] at Clean Slate Centers in Greenfield, Massachusetts, testified that Mother tested positive for cocaine twice in August of 2013 and that the tests were not verified because all her other tests were negative, except that she tested positive for marijuana "with regularity." The use of

decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] In cases involving a minor child, it is this Court's policy to redact names in order to protect the child's identity. In this case, we will alter the names of the child and both parents by referring to their given name and the first letter of their surname.

[3] Mother was not certain as to exactly when she left the child with the Hurds, testifying that it was "September or October [2012], if I'm correct."

[4] Dr. Smith testified that Suboxone is a principle treatment for opiate addiction. The drug takes away the cravings. After a lengthy period of maintenance, the dosage is gradually reduced.

marijuana is discouraged in the program of Suboxone treatment, but is not a reason to discharge the patient from the program.

Mother moved to Massachusetts in March of 2013. She lived with family and friends for a while and was homeless for four or five months. Four permanency plans were created in this matter. DCS filed a petition to terminate Mother's and Father's parental rights on October 9, 2013, based on the grounds of abandonment by failure to visit, abandonment by failure to support, abandonment by failure to provide a suitable home, substantial noncompliance with the permanency plan, and persistent conditions. The trial court found as to Father that all these grounds existed and as to Mother all the grounds except failure to support existed. The court also found that it was in the best interest of the child that her parents' parental rights be terminated.[5] Mother appealed.

## II. STANDARD OF REVIEW

The standard for appellate review of parental termination cases was recently reiterated by the Tennessee Supreme Court:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016) (citations omitted), *petition for cert. filed sub nom.Vanessa G. v. Tenn. Dep't of Children's Servs.* (U.S. Apr. 27, 2016) (No. 15-1317).

## III. ANALYSIS

---

[5] Father was served by publication and never participated in the case. The trial court ordered a judgment by default against him. Father is not a participant in the appeal.

Although a parent's right to the care and custody of a child is constitutionally protected, it is not absolute. *Id*. at 522. "Tennessee law, thus, upholds the [S]tate's authority as *parens patriae* when interference with parenting is necessary to prevent serious harm to a child." *Hawk v. Hawk*, 855 S.W.2d 573, 580 (Tenn. 1993). Tennessee law lists the grounds for termination of parental rights. Tenn. Code Ann. § 36-1-113(g)(1)-(13). A court must find by clear and convincing evidence that (1) at least one of the statutory grounds for termination of parental rights has been established and, (2) that termination of the parent's rights is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c). Tennessee law lists several nonexclusive factors courts shall consider in examining the best interest of the child. Tenn. Code Ann. § 36-1-113(i).

## A. *Grounds*[6]

### 1. Abandonment by Failure to Visit

A parent's rights may be terminated upon proof by clear and convincing evidence that the parent "abandoned" the child. Tenn. Code Ann. §§ 36-1-113(c)(1), (g)(1). "Abandonment," for purposes of terminating a parent's rights, is defined to include the following:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents . . . , that the parent or parents . . . either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child.

Tenn. Code Ann. § 36-1-102(1)(A)(i). Willfulness is a critical element of the definition of abandonment. Willful, in this context, means that "a parent who failed to visit or support had the capacity to do so, made no attempt to do so, and had no justifiable excuse for not doing so." *In re Adoption of Angela E.*, 402 S.W.3d 636, 640 (Tenn. 2013) (citing *In re Audrey S.*, 182 S.W.3d 838, 864 (Tenn. Ct. App. 2005)); *see In re Audrey S.*, 182 S.W.3d at 863-64 (an individual acts willfully if he or she knows what he is doing and has the intention to do what he or she is doing).

"Whether a parent failed to visit or support a child is a question of fact. Whether a

---

[6] In *In re Carrington H.*, our Supreme Court held that, "in an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal." *In re Carrington H.*, 483 S.W.3d at 525-26. We do not interpret *In re Carrington H*. as requiring the Court of Appeals to examine grounds that are not found by the trial court to justify termination of parental rights.

parent's failure to visit or support constitutes willful abandonment, however, is a question of law." *In re Adoption of Angela E*., 402 S.W.3d at 640 (citing *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007)). A court will not find a parent has abandoned his or her child if the failure to support or to visit the child is outside his or her control. *Id.*

Because the termination petition was filed on October 9, 2013, the relevant four month time period for abandonment for failure to visit is from June 8, 2013, through October 8, 2013. Mother testified that she moved to Massachusetts in March 2013 and did not see the child again until August 29, 2014. At the April 9, 2014,[7] hearing, Kim Huening, Mother's DCS case manager, testified as to the contents of the permanency plan. She read the plan's requirements, including that "[t]he parents will contact DCS to set up visitation with Anicia." One of DCS's responsibilities was "to facilitate any visitation that they need to provide hotel room or help with transportation." Mother maintained that she did not have the "financial assistance" to visit Tennessee. When assistance was offered, Mother claimed that she took it. Mother testified the assistance was not offered until June, 2014. Ms. Huening testified that, in July of 2013, DCS offered to provide transportation to Tennessee for visitation, but both parents turned it down, saying that they would never return to Tennessee. Ms. Huening testified that, "Numerous times we told them we would assist them in seeing their child but they did not wish to act on that." The record is replete with DCS attempts to contact Mother, offers of assistance for visitation, and attempts to work with Mother. Ms. Huening testified that all were rebuffed:

> A lot of our conversations were very heated and very irate. Both parents cussing, swearing, threatening. A lot of information Annalin did not provide me because it wasn't my business, she stated, her and Robert. She wouldn't provide, any of the agencies, the Suboxone agency[8] she didn't provide that name or where. Some of the conversation it was she's doing it and she wouldn't offer, even when she had a job they wouldn't tell me where it was. I didn't find out until months and months later where it was at. She wouldn't sign any releases so I couldn't get any documentation from any facilities, employee, anyone.

Mother did not change her tune until court hearings began on the termination petition. Ms. Huening testified that "[i]n June of 2014 Annalin gave me the number for Recover

---

[7] Unfortunately, the proceedings in this matter were quite spread out, with hearings occurring on December 9, 2013, April 9, 2014, June 25, 2014, September 22, 2014, November 21, 2014, March 23, 2015, and May 4, 2015.

[8] The "Suboxone agency" would be the entity that provided Mother's Suboxone treatments.

Project that she's been working with. Then she started signing releases for me and gave me agencies she was working with people's names and phone numbers."

We concur with the trial court that DCS proved abandonment by failure to visit by clear and convincing evidence.

2. Abandonment by Failure to Provide a Suitable Home[9]

Tennessee Code Annotated Section 36-1-113(g)(1) states that a ground for termination of parental rights is abandonment by the parent or guardian, as defined in Tenn. Code Ann. § 36-1-102. Tennessee Code Annotated Section 36-1-102(1)(A)(ii) provides a definition of abandonment as follows:

> The child has been removed from the home of the parent or parents or the guardian or guardians as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child, as defined in § 37-1-102, and the child was placed in the custody of the department or a licensed child-placing agency, that the juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the parent or parents or the guardian or guardians to establish a suitable home for the child, but that the parent or parents or the guardian or guardians have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date.

Mother had been told by DCS of the need for a stable, suitable home in November of 2012 through the plan she put together with Ms. Carrie McKinney. The child was declared dependent and neglected on January 3, 2013. Four months following the removal is May 4, 2013. Mother left Kingsport, Tennessee for Massachusetts in March

---

[9] As the guardian ad litem points out, Mother failed to appeal this ground. In most situations, we would consider such an issue to be waived. However, as stated above, *supra* note 2, our Supreme Court has held that we "must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal." *In re Carrington H.*, 483 S.W.3d at 525-26.

of 2013. She admitted she "couldn't get stable housing here in the State of Tennessee." She stayed with friends and family in Massachusetts and had no job. Her contact with DCS was, in her words, "not that frequent." Mother eventually became homeless for several months. We agree with the trial court's statement that "[t]he record is replete with reasonable efforts offered and implemented by the Department of Children's Services." Mother only started paying real attention after the termination petition was filed and hearings began. We concur with the trial court that DCS proved abandonment by failure to provide a suitable home by clear and convincing evidence.

### 3. Substantial Noncompliance with the Permanency Plan

A parent's parental rights may be terminated when "[t]here has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan pursuant to the provisions of title 37, chapter 2, part 4." Tenn. Code Ann. § 36-1-113(g)(2).

The trial court made a number of findings in this regard:

54. At the time of filing the petition for termination of parental rights [Mother] was not in substantial compliance with her statement of responsibilities on the plan.

55. Prior to filing the petition for termination she was in Suboxone treatment, which in the Court's view is not a drug rehabilitation program.

56. When the petition for termination was filed she did not have employment, she was homeless at times and living with friends.

57. Since the filing of the termination petition she has been drug screened since June 2014, entered an alcohol and drug treatment program, refrained from illegal drugs since September 2014. She signed releases for DCS since 2014, she has stayed in contact with DCS and notified them of relevant events, and medical information. She has completed a parenting assessment and parenting classes, and some mental health treatment. On March 16th 2015 she was determined eligible for vocational rehabilitation services.

58. [Mother] is currently on a Suboxone regimen, and in the Court's view although she is not using illegal drugs, she is still addicted to opiates. It is being managed by physicians, but as in this case oftentimes people on Suboxone will mix it with other drugs because they are still truly addicts. [Mother] did that with marijuana, and marijuana laced with another drug as

she testified to, perhaps heroin or cocaine.

59. [Mother] has not completed her alcohol and drug treatment and according to the testimony she will not be released from her Suboxone treatment anytime soon. She has not finished her anger management counseling and it is clear to the Court that she needs that. She does not have any means of financial support or employment, and would need services in her home to make it safe for the child to return if and when she and the child ever became bonded.

60. The Court finds that although [Mother] has done a lot, her actions to satisfy the statement of responsibilities on the plan came too little too late. The child has been in DCS custody since December 2012 and [Mother] did nothing to speak of in the beginning of the case for many months. This child needs and deserves permanency, which she has in her foster home. Therefore the Court finds that [Mother] has not substantially complied with her statement of responsibilities in the permanency plan.

We conclude that the findings of the trial court are all supported by the record, except for paragraph 58. The uncontradicted testimony was that Mother's doctor did not want to decrease the Suboxone at the time of her testimony because of the stress of the termination proceedings. Furthermore, Dr. Smith testified, "Because Suboxone is a partial opiate agonist she does not experience drug effects as she might on methadone, a full agonist. She can continue to be fully functional while taking Suboxone. Suboxone therapy would not interfere with her ability to care for her children." Mother's permanency plans specified that she was to remain free of illegal drugs. There was no testimony or evidence that Mother's taking of Suboxone pursuant to a prescription was illegal. Mother did admit to using marijuana. That activity violates the permanency plan.

We concur with the trial court that DCS proved substantial noncompliance with the permanency plan by clear and convincing evidence.

4. Persistent Conditions

A parent's parental rights may be terminated when:

(3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the

- 8 -

care of the parent or parents or the guardian or guardians, still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or parents or the guardian or guardians in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

Tenn. Code Ann. § 36-1-113(g)(3).

The trial court made the following findings about this ground:

63. In regard to [Mother] at the time of filing the petition to terminate parental rights nothing had changed with her situation that would make it safe to return the child to her.

64. In spite of the progress [Mother] has made since the filing of the petition, she is still addicted to opiates, she was using illegal drugs until September 2013, she has unresolved anger issues, and no job, and needs increased parenting skills; she has housing now but it has not been shown to be suitable because the child has not been there and no one has been able to observe the home.

65. The child and [Mother] do not have a bond, and it would endanger the safety of the child to return her to the custody of her mother.

66. The Court has reviewed the exhibits and the record is replete with reasonable efforts by DCS to offer assistance and services to the Parents, including notices of meetings and hearings, drug screens, attempts to contact the parents. These efforts were initially met with profanity from the parents and their unwillingness to engage or cooperate. Once the parents relocated to Massachusetts DCS contacted service providers there to attempt to assist the parents. DCS provided funding and supervised visitation.

67. Despite the recent Supreme Court ruling that reasonable efforts is no longer an element to this type case[10] the Court still finds that DCS has done everything that would have been required of them in terms of reasonable

---

[10] *See In re Kaliyah S.*, 455 S.W.3d 533, 555-56 (Tenn. 2015).

efforts in this difficult case.

Although the court did not address the six-month requirement, the record is clear that the requirement is met in this case. The child had been removed from her parents' home for over six months.

We concur with the trial court that DCS has proved the persistent conditions ground for termination of Mother's parental rights by clear and convincing evidence.

## B. Best Interest

Even when one or more grounds for terminating a parent's parental rights have been proved by clear and convincing evidence, the trial court must examine whether termination of those rights is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c)(2). A nonexclusive list of factors the trial court is to consider is found in Tenn. Code Ann. § 36-1-113(i):

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether

there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

"The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." *In re Audrey S.*, 182 S.W.3d at 878.

The trial court made the following best interest findings concerning Mother:

70. [Mother] has made substantial progress toward the end of the case, but at this point in the case and in the child's life . . . she does not have a bond with the child, and the child would undergo severe psychological harm if returned to her mother.

71. The child has substantially bonded with the Hurds, and [Mother's] conduct with respect to still having failed to complete anger management and needing more parenting education, it is just too little too late.

72. Neither [Father] nor [Mother] have made lasting changes in their lifestyle and conduct so that lasting change does not appear probable. Despite [Mother's] progress the Court finds that she has yet to establish that her changes are lasting.

75. There is a relationship between the child and [Mother]; however, it is a relationship of acquaintance and friendship. It is not a parent child relationship from the child's point of view, in that the child would not look to [Mother] for nurturing, comfort and all the things a child needs from a mother.

76. It would have a horrible effect on the child to remove her from her current
caregivers. The child looks to Mrs. Hurd for comfort and reassurance

- 11 -

during her visitation with [Mother] because there is no meaningful relationship between them.

77. It is in the child's best interest for termination because both [Father] and [Mother] have abused drugs and abandoned the child.

Our examination of the record confirms the trial court's findings. Clear and convincing evidence supports the trial court's finding that it is in Anicia's best interest to terminate Mother's parental rights.

### C. Nonattendance at Hearings

Mother includes a section in her brief entitled, "This Court Should Reverse the Order Terminating Appellant's Parental Rights Because Appellant Failed to Understand the Proceedings." Mother did not include this issue in the Statement of the Issues of her brief. "'Courts have consistently held that issues must be included in the Statement of Issues Presented for Review required by Tennessee Rules of Appellate Procedure 27(a)(4). An issue not included is not properly before the Court of Appeals.'" *Bunch v. Bunch*, 281 S.W.3d 406, 410 (Tenn. Ct. App. 2008) (quoting *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001)); *see also Cartwright v. Jackson Capital Partners, Ltd. P'ship*, 478 S.W.3d 596, 615 (Tenn. Ct. App. 2015) (quoting *Bunch v. Bunch*, 281 S.W.3d at 410). Thus, Mother's "argument" on this point should be considered waived.

Nevertheless, we note that Mother contends she "was not present for either the Seventy-Two Hour Hearing or the Dependency and Neglect adjudication, because she had been told by the Department that she did not need to be present." Mother testified that she never heard of a three-day hearing or seventy-two hour hearing. Yet, the Child and Family Team Meeting Summary for December 4, 2012, a meeting Mother attended, states that "TL [Team Leader] Robinette explained Foster care and court process with the three day hearing, the 30 day hearing." It also states as an action step that "[Mother] will come to the 3 day hearing," listing the person responsible as "[Mother]." The trial court expressly discredited Mother's testimony in his oral ruling.

We also note that this Court recently stated:

A number of Tennessee cases stand for the proposition that dependency and neglect proceedings are separate and distinct from termination proceedings and that violations of a parent's due process rights in a dependency and neglect proceeding are remedied by the procedural protections afforded in termination proceedings. *See, e.g., In re: L.A.J., III*, W2007-00926-COA-R3-PT, 2007 WL 3379785, at *6 (Tenn. Ct. App. Nov. 15, 2007), *no appl. perm. appeal filed*; *In re: S.Y.*, 121 S.W.3d 358, 366 (Tenn. Ct. App.

2003).

*In re Aniston M.*, No. E2015-02076-COA-R3-PT, 2016 WL 2626974, at \*3 (Tenn. Ct. App. May 5, 2016).

For any and all of the above reasons, we find that the so-called issue of Mother's nonattendance at certain hearings is without merit.

## IV. CONCLUSION

The decision of the trial court is affirmed. Costs are taxed against the Department of Children's Services, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE